**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEBORAH LYNN MILLER,

    Plaintiff,

v.

CITY OF DETROIT, *et al.*,

    Defendants.

Case No. 18-13147

HON. DENISE PAGE HOOD

_____/

**ORDER DENYING ROMANOWSKI'S
MOTION TO DISMISS [Dkt. No. 5]**

## I. INTRODUCTION

Plaintiff filed this 42 U.S.C. § 1983 action on October 9, 2018, alleging that Defendants violated her constitutional rights when they subjected her to cruel and unusual punishment, excessive force, and gross negligence with respect to her medical conditions while in custody at the Detroit Detention Center. On November 15, 2018, Defendant Warden Kenneth Romanowski ("Romanowski") filed a Rule 12(b)(6) Motion to Dismiss. [Dkt. No. 5] Romanowski's Motion to Dismiss has been fully briefed.

For the reasons that follow, the Court denies Romanowski's Motion to Dismiss.

1

## II. BACKGROUND

On September 22, 2017, Plaintiff was confined in the Detroit Detention Center by the Detroit Police Department ("DPD") officers on a warrant for failing to appear on a driving on a suspended license charge. On several occasions, Plaintiff's boyfriend informed the arresting officer(s) that Plaintiff was a crack and heroin addict, an alcoholic, and had high blood pressure requiring medication and medical treatment. Plaintiff's boyfriend later informed a Detroit Detention Center officer of Plaintiff's conditions, again advising that Plaintiff had serious health issues and insisting that Plaintiff needed medication and immediate medical treatment. Two days later, Plaintiff was found unresponsive in a holding cell before she was transported to Detroit Receiving Hospital. Plaintiff remained in coma at Detroit Receiving Hospital for several days and suffered permanent injuries as a result.

Plaintiff's four-count Complaint includes the following claims, and Plaintiff alleges Romanowski should be held liable with respect to each claim: (1) Count I - deliberate indifference to a serious medical need under the Fourth, Eighth, and Fourteenth Amendments; (2) Count II - cruel and unusual punishment/excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments; (3) Count III - *Monell* liability; and (4) Count IV - gross negligence and wanton and willful misconduct.

As to Romanowski, Plaintiff specifically alleges:

9. At all times relevant, Defendant WARDEN KENNETH ROMANOWSKI was acting under color of law and in the course and scope of his employment as a Warden for the Detroit Detention Center located in Wayne County, State of Michigan. He is named in this action in his official and individual capacity.

\* \* \* \* \*

17. That upon information and belief Defendant WARDEN KENNETH ROMANOWSKI became aware of Plaintiff's presence or should have become aware of her presence in the jail and knew of or should have known of the Plaintiff's serious medical needs requiring immediate medical attention.

\* \* \* \* \*

33. That the acts or omissions by Defendants, WARDEN KENNETH ROMANOWSKI and John and Jane Doe Corrections Officers 1-8 were unreasonable and performed knowingly, deliberately, indifferently, intentionally, maliciously, and with callousness, and deliberate indifference to Plaintiff's wellbeing and serious medical needs.

\* \* \* \* \*

35. That Defendants upon information and belief WARDEN KENNETH ROMANOWSKI and JOHN AND JANE DOE CORRECTIONS OFFICERS knew of the Plaintiff's serious medical needs requiring immediate medical attention.

\* \* \* \* \*

52. At all times relevant, Defendants CITY OF DETROIT and WARDEN KENNETH ROMANOWSKI response to this knowledge was so inadequate as to show a complete disregard for whether the corrections officers, medical staff, and mental health staff would violate the constitutional rights of citizens to be free from violations of the Fourth and Eighth Amendments to the United States Constitution. [Dkt.

No. 1, PgID 18]¹

53. Defendants CITY OF DETROIT and WARDEN KENNETH ROMANOWSKI implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical needs and cruel and unusual punishment of citizens, and knew or should have known that such treatment would deprive inmates of their constitutional rights. [Dkt. No. 1, PgID 18]

* * * * *

55. At all times relevant, Defendants CITY OF DETROIT and WARDEN KENNETH ROMANOWSKI knew or should have known that there was a clear and persistent pattern of violations of citizen's' constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, as described in the preceding paragraphs. [Dkt. No. 1, PgID 19]

56. Defendants CITY OF DETROIT and WARDEN KENNETH ROMANOWSKI tolerated the corrections officers, medical staff, and mental health staff's repeated violations of the Fourth and Eighth Amendments to the United States Constitution, which allowed the corrections officers to continue to engage in this unlawful behavior. [Dkt. No. 1, PgID 19]

57. Defendants CITY OF DETROIT and WARDEN KENNETH ROMANOWSKI refused to discipline corrections officers, medical staff, and mental health staff who violated citizens' constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, failed to fully investigate allegations of misconduct, looked the other way and, thus, tacitly encouraged such behavior. In doing so, Defendants CITY OF DETROIT and WARDEN KENNETH

---

¹Plaintiff's Complaint contains two of the following number paragraphs: ¶¶ 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58. *See* Dkt. No. 1, PgID 13-22. Paragraphs 52, 53, and 55 set forth and discussed in this Order are the second such Paragraphs 52, 53, and 55 set forth in the Complaint, at PgID 18-19. When Plaintiff files her amended Complaint, Plaintiff shall properly order the numbered paragraphs contained therein.

> ROMANOWSKI condoned, ratified or encouraged the corrections officers, medical staff, and mental health staff to violate the Fourth and Eighth Amendment to the United States Constitution as a matter of policy. [Dkt. No. 1, PgID 19]

In the Complaint, (a) ¶ 9 is set forth in the General Allegations portion; (b) ¶ 17 is in the Factual Allegations portion; (c) ¶¶ 33 and 35 are in Count I; and (d) ¶¶ 52, 53, and 55-57 are in Count III.

## III. APPLICABLE LAW & ANALYSIS

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

B. **Qualified Immunity**

As recently stated by the Supreme Court:

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations and quotation marks omitted). Qualified immunity is a two-step process. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the Court determines whether, based upon the applicable law, the facts viewed in a light most favorable to the plaintiff show that a constitutional violation has occurred. Second, the Court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Saucier*, 533 U.S. at 201-02; *Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005). Only if the undisputed facts, or the evidence viewed in a light most favorable to the plaintiff, fail to establish a prima facie violation of clear constitutional law can this court find that the defendants are entitled to qualified immunity. *Turner v. Scott*, 119 F.3d 425, 428 (6th

Cir. 1997).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff also must establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## IV. ANALYSIS

### A. Counts I, II and IV

Romanowski contends that the Complaint should be dismissed against him because Plaintiff has failed to allege that Romanowski was personally involved in the actions or the failure to take action regarding her need for medical treatment. Romanowski argues:

> Plaintiff's specious allegations against Defendant Warden incorrectly assume that Defendant Warden was personally involved in Plaintiff's care while at Detroit Detention Center. He was not. By nature of his position as Warden, Defendant Warden operates in a supervisory, managerial and administrative capacity. This reality helps to explain why Plaintiff's complaints against him are premised solely on his alleged

7

"failure to act" to stop the alleged unconstitutional behavior of the other defendants, as opposed to what is actually required to sustain a § 1983 claim – direct personal involvement in the alleged constitutional behavior.

Dkt. No. 5, PgID 86-87.

A prisoner alleging cruel and unusual punishment must demonstrate that the failure to act was sufficiently serious to rise to constitutional levels (an objective standard) <u>and</u> that the official acted with a sufficiently culpable state of mind (a subjective standard). *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Romanowski does not challenge that his alleged failure to act was sufficiently serious as to rise to constitutional levels.

As to the latter component, Romanowski argues that a prison official cannot be found liable for denying an inmate necessary medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Sixth Circuit has concluded:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned

as the infliction of punishment.

*Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005) (citations and quotations omitted).

Romanowski's argument that he was not personally involved in Plaintiff's care ignores the Rule 12(b)(6) standard that requires that the Court must accept as true Plaintiff's allegations – even if many of them *vis a vis* Romanowksi's personal involvement may not be true. Whether Plaintiff's allegations of Romanowski's personal involvement are accurate requires a factual determination that will have to be ascertained in discovery (though it is possible that Plaintiff (her counsel) should have ascertained (or tried to ascertain) as much before filing the Complaint). As set forth below, when accepting the Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged that Romanowski was personally involved in the actions upon which Plaintiff's cause of action is premised.

With respect to Counts I, II, and IV, each of which requires personal involvement of a defendant, Plaintiff specifically identified Romanowski as having knowledge of, and having personally involvement with or the failure to act upon, Plaintiff's condition. Plaintiff alleges that: (a) "WARDEN KENNETH ROMANOWSKI . . . <u>knew of the Plaintiff's serious medical needs</u> requiring immediate medical attention" [Dkt. No. 1, ¶ 35]; and (b) "<u>the acts or omissions by</u>

Defendants, WARDEN KENNETH <u>ROMANOWSKI</u> . . . <u>were</u> unreasonable and <u>performed knowingly, deliberately, indifferently, intentionally, maliciously, and with callousness, and deliberate indifference to Plaintiff's wellbeing and serious medical needs</u>. [Dkt. No. 1, ¶ 33 (emphasis added)]

The Court also notes that, in each of the following paragraphs of the Complaint, Plaintiff alleged that Defendants (which includes – and does not exclude – Romanowski) had personal involvement with respect to Plaintiff's treatment (or lack thereof):

(1) "That <u>each and every one of the defendants knew of the symptoms Plaintiff was suffering from and knew that if she did not receive immediate medical treatment she was at a risk for serious harm</u>;" [Dkt. No. 1, ¶ 20 (emphasis added)]

(2) "Defendants would have observed the Plaintiff in the holding cell moaning, jerking, convulsing, shaking, and exhibiting the obvious and typical signs of an individual going through withdrawals;" [Dkt. No. 1, ¶ 25]

(3) "Although Defendants would have observed Plaintiff suffering from the obvious and typical signs of withdrawals, and despite being informed by Plaintiff's family that she was in need of immediate medical treatment for serious medical conditions, Defendants failed to provide Plaintiff with any medical care/treatment whatsoever and left her suffering and in extreme pain in the holding cell until she went into a coma;" [Dkt. No. 1, ¶ 26]

(4) "That <u>as a direct result of Defendants' deliberate indifference to plaintiff's serious medical needs</u>, Plaintiff DEBORAH LYNN MILLER, suffered significant physical and emotional injuries and damages, including, but not limited to, physical injuries, emotional injuries,

financial damages, humiliation, embarrassment, and pain and suffering which continue today;" [Dkt. No. 1, ¶ 31 (emphasis added)]

(5) "That <u>Plaintiff's serious medical conditions were so obvious that even a lay person would have easily recognized the necessity for a doctor's immediate attention and each and every one of these Defendants would have easily recognized the necessity for a doctor's immediate attention</u>;" [Dkt. No. 1, ¶ 36 (emphasis added)]

(6) "That the aforementioned <u>Defendants' conduct amounted to a deliberate indifference</u> to Plaintiff's well-being and serious medical needs;" [Dkt. No. 1, ¶ 40 (emphasis added)]

(7) "<u>Defendants repeatedly and willfully failed to provide Plaintiff with medical care and/or delayed medical care that was necessary to treat her serious medical needs</u>, and Defendants repeatedly and willfully failed to provide such treatment, care and assistance although they <u>were on notice of Plaintiff's serious medical needs</u>, and although they knew that in so doing, they were depriving Plaintiff of basic needs and violating her constitutional rights;" [Dkt. No. 1, ¶ 46 (emphasis added)]

(8) "Throughout her incarceration, the treatment, failure to provide treatment and the delay of treatment to Plaintiff by each and every Defendant, constituted cruel and unusual punishment in violation of Plaintiff's 4th, 8th and 14th Amendment rights;" [Dkt. No. 1, ¶ 47]

(9) "That in taking custody of Plaintiff, Defendants undertook and owed a duty to Plaintiff to make reasonable efforts to care for her in a reasonable and prudent manner, to exercise due care and caution, and in such operation as the rules of the common law require and in accordance with the customs, policies and procedures;" [Dkt. No. 1, ¶ 59]

(10) "<u>Defendants breached each and every duty owed to Plaintiff</u>;" [Dkt. No. 1, ¶60 (emphasis added)] and

(11) "That notwithstanding the aforementioned duties, the aforementioned <u>Defendants</u> took into custody, incarcerated, and <u>monitored Plaintiff in an extremely careless, grossly negligent, reckless, and wanton and willful</u>

11

<u>manner without concern whatsoever for her safety and welfare, and failed to tend to Plaintiff's serious medical needs[.]</u>" [Dkt. No. 1, ¶ 61 (emphasis added)]

Based on the foregoing allegations, which are found in the Factual Allegations section of the Complaint, as well as in Counts I, II, and IV of the Complaint, the Court concludes that Plaintiff has adequately pleaded claims against Romanowski for deliberate indifference to her serious medical needs, cruel and unusual punishment, and gross negligence.[2]

As to Count II, which alleges multiple claims, the Court notes that Plaintiff does not appear to allege an excessive force claim against Romanowski, specifically or even generally. As Plaintiff will need to amend her Complaint anyway, the Court orders Plaintiff to make the excessive force claim a separate Count and, if such excessive force claim is being alleged against Romanowski, expressly state that a claim for excessive force is being alleged against him.

**B.     Qualified Immunity**

Romanowski's assertion of a qualified immunity defense similarly relies on the version of the relevant facts that he believes to be true (that he performed only in a supervisory capacity) while overlooking the allegations set forth in the Complaint.

---

[2]The parties do not discuss the requisite elements for any of these causes of action.

As stated above, the Court finds that Plaintiff clearly alleges Romanowksi was personal involved, not simply that Romanowski was liable because he knew or should have known of unconstitutional conduct and failed to do something about it.

Based on the Complaint, and as discussed above, the Court finds that Plaintiff has alleged that her constitutional rights were violated when Defendants used excessive force, imposed cruel and unusual punishment, and denied her necessary medical care. The Court finds that – and it apparently is undisputed, as the parties do not even discuss whether – those constitutional rights were clearly established at the time of the underlying events, such that any reasonable officer would have known of those rights. The parties also do not discuss whether, but the Court finds that, Plaintiff's allegations support a finding that Romanowski's actions were unreasonable in light of those clearly established rights.

The Court denies Romanowski's assertion that he is entitled to qualified immunity.

### C. Count III - *Monell* Liability

A municipal defendant can only be subject to direct liability if it causes a constitutional violation and harm to the plaintiff because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and

promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id.* at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights and such policy must have arisen from "deliberate indifference" to the rights of its citizens. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

In addition to policy or custom, the inadequacy of police training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). The question is "whether the training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id*. at 390.

Plaintiff alleges that, in essence, Romanowski – as one who represents the official policy of the State, should be subject to municipal liability because he failed to take appropriate action and failed to train upon learning that officers engaged in

improper conduct. Those allegations primarily are found in Count III – Plaintiff's *Monell* claim. *See* Dkt. No. 1, PgID 16-20. The allegations of supervisory (*Monell*) liability are sufficient, when taken in conjunction with the many allegations detailing how Romanowski was aware of, tolerated, allowed, and condoned the violation of prisoners' constitutional rights – and failed to train to correct such violations. The Court specifically notes the following allegations that Romanowski:

(1) "failed to train, discipline and supervise corrections officers responsible for inmates' treatment, custody and care, and/or encouraged the corrections officers to violate federal and state laws without regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;"

(2) "refused to provide the corrections officers any training, discipline and supervision with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;"

(3) "refused to provide corrections officers with supervision and discipline to protect the constitutional rights of citizens;"

(4) "refused to require the corrections officers to follow policies and procedures and state and federal law relating to the right of an inmate to be provided with medical care for serious medical needs and that excessive force not be used upon them;"

(5) "knew or should have known that the policies, procedures, training supervision and discipline of the corrections officers were inadequate for the tasks that each Defendant was required to perform;"

(6) was "on notice and knew that the failure of training, discipline and/or supervision of the corrections officers, medical staff, and mental health staff with regard to the constitutional rights of citizens to be free from

15

violations of the Fourth, and Eighth Amendments to the United States Constitution, as described in the preceding paragraphs were inadequate and would lead to the violation of inmates' constitutional rights;"

(7) had a "response to this knowledge [that] was so inadequate as to show a complete disregard for whether the corrections officers, medical staff, and mental health staff would violate the constitutional rights of citizens to be free from violations of the Fourth and Eighth Amendments to the United States Constitution;"

(8) "implicitly authorized, approved, or knowingly acquiesced in the deliberate indifference to the serious medical needs and cruel and unusual punishment of citizens, and knew or should have known that such treatment would deprive inmates of their constitutional rights;"

(9) "knew or should have known that there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution;"

(10) "tolerated the corrections officers, medical staff, and mental health staff's repeated violations of the Fourth and Eighth Amendments to the United States Constitution, which allowed the corrections officers to continue to engage in this unlawful behavior;"

(11) "refused to discipline corrections officers, medical staff, and mental health staff who violated citizens' constitutional rights to be free from violations of the Fourth and Eighth Amendments to the United States Constitution, failed to fully investigate allegations of misconduct, looked the other way and, thus, tacitly encouraged such behavior;" and

(12) "[i]n doing so, . . . condoned, ratified or encouraged the corrections officers, medical staff, and mental health staff to violate the Fourth and Eighth Amendment to the United States Constitution as a matter of policy."

*Id.*

Based on the foregoing allegations, the Court finds that Plaintiff has adequately pleaded a claim for *Monell* liability against Romanowski.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Romanowki's Motion to Dismiss [#5] is DENIED.

s/Denise Page Hood<br>Chief Judge, U. S. District Court

Dated: April 4, 2019